IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01813-PAB

VIOLETA DUMITRASCU, on behalf of A.M.B.D.,

    Plaintiff-Petitioner,

v.

ALIN DUMITRASCU,

    Defendant-Respondent.

## ORDER

This matter comes before the Court on defendant-respondent Alin Dumitrascu's motions to transfer to another venue or to another judge, Docket Nos. 88, 108, motions to vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), Docket Nos. 89, 96, 104, 106, 107, motions for criminal and civil contempt, Docket Nos. 101, 102, motion for preliminary injunction, Docket No. 100, and motions for a status update. Docket Nos. 95, 97, 99, 110.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

The facts of this case are discussed in an order issued by the Court on September 15, 2021.  *See Dumitrascu ex rel. A.M.B.D. v. Dumitrascu*, No. 21-cv-01813-PAB, 2021 WL 4197378, at *1-3 (D. Colo. Sept. 15, 2021).  On July 2, 2021, plaintiff-petitioner Violeta Dumitrascu filed a petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction[1] and its implementing law in the United

---

[1] Available at http://www.hcch.net/upload/conventions/txt28en.pdf.

States, the International Child Abduction Remedies Act, 22 U.S.C. § 9001, et seq. Docket No. 1 at 1. The petition alleged that Mr. Dumitrascu had wrongfully retained the parties' minor child in the United States, *id.* at 1, ¶ 1, and sought the return of the child to Romania – the child's alleged place of habitual residence – so that a Romanian court could make a custody determination. *Id.* at 9. On August 25, 2021, the Court held an evidentiary hearing. Docket No. 26. Mr. Dumitrascu was represented by retained counsel. *Id.* at 1. On September 15, 2021, the Court issued an order finding that the child's habitual residence was in Romania and that Mr. Dumitrascu had wrongfully retained the child in the United States. *Dumitrascu*, 2021 WL 4197378 at *3-11. The Court therefore granted the petition and ordered Mr. Dumitrascu to return the child to Romania. *Id.* at *14. On September 16, 2021, the Court entered final judgment and closed the case. Docket No. 28.

The Court denied Mr. Dumitrascu's motion to stay the order pending appeal. *Dumitrascu ex rel. A.M.B.D. v. Dumitrascu*, No. 21-cv-01813-PAB, 2021 WL 4861837, at *7 (D. Colo. Oct. 19, 2021). On May 16, 2022, the Tenth Circuit affirmed the Court's order. *Dumitrascu ex rel. A.M.B.D. v. Dumitrascu*, 2022 WL 1529624, at *5 (10th Cir. May 16, 2022).

On April 7, 2025, Mr. Dumitrascu filed a document with the clerk of the court requesting information about how I was assigned to the case. Docket No. 85. The clerk's office responded to that letter on April 10, 2025. Docket No. 86. Mr. Dumitrascu subsequently submitted an additional twenty-two filings in this case. The Court has already ruled on Mr. Dumitrascu's motions requesting the undersigned's recusal. *See* Docket No. 111.

## II. ANALYSIS

### A. <u>Motion to Transfer Venue</u>

Mr. Dumitrascu requests that, pursuant to 28 U.S.C. § 1404(a), this case be transferred to another federal district court outside of the District of Colorado, "including, but not limited to the U.S. District Court for the District of Columbia," for consideration of his motion requesting relief under Federal Rule of Civil Procedure 60(b)(6). Docket No. 108 at 1, 3, ¶ 6. The Court understands Mr. Dumitrascu to offer three reasons in support of this motion. First, he notes what he believes is the undersigned's failure to act quickly enough on the motions he filed between April and June 2025. *Id.* at 1, ¶ 2. Second, Mr. Dumitrascu argues that the undersigned "has a known professional connection with one of the opposing attorneys, Mr. Habib Nasrullah, and failed to disclose this conflict while presiding over the case," *id.* at 1, 3, ¶3,[2] and that "[m]aintaining this case in the District of Colorado under a judge with a direct and personal connection to opposing counsel creates an appearance of bias and denies the Movant a fair and impartial hearing." *Id.* at 3, ¶ 5. Third, Mr. Dumitrascu states that the plaintiff-petitioner "resides in Romania and has no ties to the State of Colorado." *Id.* at 3, ¶ 4.[3]

---

[2] The Court notes that the second page of Docket No. 108 appears to have been inadvertently included in the motion, and that the first and third pages of the motion should be read together as comprising the entirety of the motion. *See* Docket No. 108 at 1-3.

[3] The Court notes that, while this assertion refers to the "respondent" as living in Romania, Docket No. 108 at 3, ¶ 4, and refers to Ms. Violeta Dumitrascu at the beginning of the motion as "respondent," *id.* at 1, it is actually Mr. Dumitrascu who is the defendant-respondent in this case and Ms. Dumitrascu who is the plaintiff-petitioner. *See, e.g.,* Docket No. 1 at 1.

3

Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To warrant a transfer, the moving party must establish that: "(1) the action could have been brought in the alternate forum[;] (2) the existing forum is inconvenient[;] and (3) the interests of justice are better served in the alternate forum." *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991)).

Mr. Dumitrascu provides no basis for transfer of this case under 28 U.S.C. § 1404(a). First, he does not explain why this action could have been brought in a different forum. The International Child Abduction Remedies Act states that a petition brought under the Hague Convention shall be filed in the place in which the child is located. 22 U.S.C. § 9003(b); *see also Avila v. Morales*, No. 13-cv-00793-MSK-MEH, 2013 WL 5499806, at *6 (D. Colo. Oct. 1, 2013). At the time of the filing of the petition in this case, the minor child was located in Colorado. *See Dumitrascu*, 2021 WL 4197378 at *1-3. Thus, the Court finds that the petitioner brought this case in the only jurisdiction in which it could have been brought. Mr. Dumitrascu fails to cite any authority that would support a contrary position. Second, Mr. Dumitrascu does not explain why he believes the existing forum is inconvenient. He lists his address as one in Colorado. *See, e.g.*, Docket No. 89 at 3. Third, Mr. Dumitrascu does not explain why

4

he believes an alternate forum would better serve the interests of justice.[4]  The Court will therefore deny the motion for a transfer of venue.[5]

### B. Motion to Vacate Under Rule 60(b)(6)

Mr. Dumitrascu has submitted five motions arguing that the Court's judgment in this case should be vacated pursuant to Federal Rule of Civil Procedure 60(b)(6). Docket Nos. 89, 96, 104, 106, 107.[6]  The Court has identified eleven arguments in support of his motions.

Federal Rule of Civil Procedure 60(b) authorizes relief after judgment based on "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).

---

[4] Even if the Court were to construe Mr. Dumitrascu's argument regarding the undersigned's alleged bias to be an argument for an alternative forum, the Court would not grant the request.  As the Court has already explained in its order addressing Mr. Dumitrascu's recusal request, the fact that the undersigned worked in the same office as an attorney in the case seventeen years ago does not demonstrate that the undersigned is biased.  Docket No. 111 at 8-9.

[5] In a letter filed on April 24, 2025, Mr. Dumitrascu requested that another judge of this Court "raise awareness" about the "injustice" of this case.  See Docket No. 88 at 1-2.  The Court will deny this request, construed liberally as a motion to transfer the case to another judge, for failure to provide any basis for transfer.

[6] In addition to these motions, Mr. Dumitrascu has submitted various other filings that appear to be support for his motions to vacate judgment.  See Docket Nos. 88, 91, 94, 98, 103.

Rule 60(b) relief is "extraordinary and may only be granted in exceptional circumstances." *The Servants of the Paraclete v. John Does*, 204 F.3d 1005, 1009 (10th Cir. 2000). Parties seeking relief under Rule 60(b) have a higher hurdle to overcome because such a motion is not a substitute for an appeal. *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005). Nor is Rule 60(b) an appropriate vehicle to "reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of the Paraclete*, 204 F.3d at 1012.

Mr. Dumitrascu requests relief under Rule 60(b)(6). Docket No. 89 at 1. Under Rule 60(b)(6), a court may relieve a party or its legal representative from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) has been described as a "grand reservoir of equitable power to do justice in a particular case." *Pierce v. Cook & Co., Inc.*, 518 F.2d 720, 722 (10th Cir. 1975) (en banc) (citation omitted). Relief under Rule 60(b)(6) is appropriate when circumstances are so "unusual or compelling" that extraordinary relief is warranted or when it "offends justice" to deny such relief. *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996).

Four of Mr. Dumitrascu's arguments focus on legal issues that were, or could have been, addressed during the litigation of this case in 2021. First, Mr. Dumitrascu asserts that it was inappropriate for the Court to consider "Romanian legal interpretations regarding custody and evidence." Docket No. 89 at 2; Docket No. 107 at 2-3. Second, Mr. Dumitrascu asserts that the "child's status as a U.S. citizen was disregarded." Docket No. 89 at 2. Third, Mr. Dumitrascu asserts that the Court made a

6

substantive custody determination even though the Hague Convention does not permit such a determination.  *Id.* at 3.  Fourth, Mr. Dumitrascu appears to assert that the Court misapplied U.S. and international law in ruling on the case.  Docket No. 106 at 13-17.  The Court finds that each of these arguments could have been made before judgment entered or when Mr. Dumitrascu appealed this Court's decision to the Tenth Circuit.  *See Servants of the Paraclete*, 204 F.3d at 1012.  The Court therefore rejects these arguments as being improperly raised in a Rule 60(b) motion.[7]

      Two of Mr. Dumitrascu's arguments involve Habib Nasrullah, who served as one of the attorneys representing Ms. Dumitrascu in this case.  First, Mr. Dumitrascu argues that the undersigned had a conflict of interest because Mr. Nasrullah and the undersigned worked together at the U.S. Attorney's Office for the District of Colorado in the past.  Docket No. 89 at 2.  For the reasons already explained in the order addressing Mr. Dumitrascu's recusal request, Docket No. 111 at 8-9, the Court finds this argument to be without merit and thus rejects it not only as a basis for recusal but as a basis for setting aside the judgment.  Second, Mr. Dumitrascu argues that Mr. Nasrullah misrepresented himself to the Court as an attorney acting under federal authority.  Docket No. 104 at 2.  The Court finds this argument to be without merit.  Mr. Nasrullah signed Ms. Dumitrascu's complaint as her attorney and listed his employer as the law firm Davis Graham and Stubbs LLP.  *See* Docket No. 1 at 10.  Mr. Nasrullah subsequently appeared at multiple hearings on Ms. Dumitrascu's behalf.  *See* Docket No. 16 at 1; Docket No. 26 at 1; Docket No. 62 at 1.  The fact that, according to one of

---

[7] Even if the Court were to consider the merits of these arguments, it would reject them.  The Court finds the arguments to constitute a mix of inaccurate characterizations of the Court's prior ruling and misstatements of the applicable law.

7

Mr. Dumitrascu's exhibits, the U.S. Department of State listed Mr. Nasrullah as a "private attorney" who might be willing to speak with Ms. Dumitrascu about her case, *see* Docket No. 102-2 at 12-13, does not mean that there was any misrepresentation to the Court about Mr. Nasrullah's role.  The Court rejects these arguments as a basis for relief under Rule 60(b)(6).

Two of Mr. Dumitrascu's arguments relate to what he believes are fraudulent testimony and evidence.  First, Mr. Dumitrascu asserts that the "opposing party introduced perjured testimony from an unqualified individual who falsely claimed to be an expert in Romanian law."  Docket No. 89 at 2.  Mr. Dumitrascu does not identify the supposedly perjured testimony, but the Court understands him to be referring to the testimony of Cristina-Mihaela Draghici-Nedelcu.  At the Hague Convention hearing, petitioner proffered Ms. Draghici-Nedelcu as an expert on Romanian family law.  Docket No. 74 at 69:11-14.  Over Mr. Dumitrascu's objection, *id.* at 70:13-15, the Court found, under Federal Rule of Evidence 702, that Ms. Draghici-Nedelcu was qualified to express opinions on Romanian family law.  *Id.* at 71:1-11.  To the extent that Mr. Dumitrascu wishes to revisit the Court's decision at the hearing to allow Ms. Draghici-Nedelcu's testimony, the Court rejects his argument as being improperly raised in a Rule 60(b)(6) motion.  *See Servants of the Paraclete*, 204 F.3d at 1012.  To the extent that Mr. Dumitrascu is instead attempting to argue that he has new information indicating that Ms. Draghici-Nedelcu misrepresented her qualifications to the Court, Mr. Dumitrascu's motion fails to cite any supporting evidence to that effect.  *See Cashner*, 98 F.3d at 580 (holding that relief under Rule 60(b)(6) is appropriate only under a showing of "unusual or compelling" circumstances).

Second, Mr. Dumitrascu argues that the Court should "strike" fraudulent evidence that Ms. Dumitrascu introduced during the Hague Convention hearing. Docket No. 106 at 3-9. Mr. Dumitrascu appears to believe that petitioner submitted various falsified various documents to the Court, although the motion does not explain why he believes these documents were falsified or cite to any credible evidence in support of that allegation. *See id.* at 3-9. As with Mr. Dumitrascu's argument regarding Ms. Draghici-Nedelcu's qualifications, the Court rejects this argument, to the extent that it involves evidentiary issues that could have been raised in the original proceedings, as improperly brought in a Rule 60(b)(6) motion. *See Servants of the Paraclete*, 204 F.3d at 1012. To the extent that Mr. Dumitrascu's arguments rely instead on information that he learned after the original proceedings concluded, the Court rejects the argument for a lack of factual support. *See Cashner*, 98 F.3d at 580.

Another of Mr. Dumitrascu's arguments is that, "[s]ince the judgment, the child has suffered documented psychological and medical trauma." Docket No. 89 at 2. Mr. Dumitrascu's motion does not provide any additional details or references in support of this allegation. Another document, however, provides supposed evidence of this abuse from September 2022 and December 2022. *See* Docket No. 98-1 at 1-4. Under Rule 60(b)(6), a case is not "properly reopened to address wholly new claims that arise from conduct occurring after [judgment] has been entered." *Williams v. Diggins,* Case No. 08-cv-00667-PAB-KLM, Docket No. 191 at 3 (D. Colo. Jan. 25, 2017) (citing *Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*, 778 F. Supp. 1144, 1154-55 (W.D. Okla. 1991)). The Court entered final judgment on September 16, 2021, Docket No. 28 at 2, and the Tenth Circuit affirmed the judgment on May 16, 2022. *Dumitrascu*, 2022 WL

9

1529624, at *5.  Thus, Mr. Dumitrascu's allegations regarding events in September and December 2022 constitute "wholly new claims" arising from "conduct occurring after [judgment]" and are therefore not an appropriate basis for a Rule 60(b)(6) motion.  *See Diggins*, Docket No. 191 at 3.  The Court rejects this basis for vacating the judgment.

Mr. Dumitrascu's final two arguments in support of his Rule 60(b)(6) motion allege broad institutional misconduct in this case.  First, Mr. Dumitrascu states that "[t]he Department of Justice confirmed receipt of complaints regarding this case but declined to act.  This inaction highlights larger institutional failures affecting the fairness of the process."  Docket No. 89 at 3.  Mr. Dumitrascu cites no cases suggesting that the Department of Justice's receipt of unspecified "complaints" would affect the fairness of a Hague Convention hearing that it was not a party to.  Second, Mr. Dumitrascu argues that a document from the Romanian Ministry of Justice shows that the State Department provided documents to Ms. Dumitrascu to support her case, and that this was an "intentional act of procedural sabotage, contributing directly to the default judgment entered on August 25, 2021."  Docket No. 96-1 at 2.  Contrary to Mr. Dumitrascu's assertion that the State Department played an inappropriate role in this case, the Court notes that federal regulations direct the State Department to provide various forms of support to parties seeking the return of a child abducted to the United States.  *See* 22 C.F.R. § 94.6.  This support includes assistance with finding legal representation and with obtaining information on the laws of the country of the child's habitual residence.  *Id.*, § 94.6(e), (g).  The Court therefore finds that Mr. Dumitrascu's allegations of governmental misconduct are without merit and do not warrant vacating the judgment.

Having considered and rejected each argument that the Court could identify in Mr. Dumitrascu's motions seeking relief under Rule 60(b)(6), the Court will deny these motions.

### C. Motions for Criminal and Civil Contempt

Mr. Dumitrascu has filed motions for criminal contempt, Docket No. 101, and civil contempt. Docket No. 102.

#### 1. Criminal Contempt

The motion for criminal contempt claims that Ms. Dumitrascu, along with another "witness" not identified by the motion, made "false statements, present[ed] fabricated information to the Court, and willfully undermin[ed] the judicial process." Docket No. 101 at 1. Mr. Dumitrascu claims that these alleged falsehoods contributed to the Court ruling against him. *Id.* at 2. Mr. Dumitrascu asks the Court to "[i]nitiate criminal contempt proceedings," "[c]onsider sanctions or referral to federal prosecution where applicable," "[v]acate the judgment obtained through false representations," and "[g]rant such further relief as this Court deems just and proper." *Id.*

Holding a party in criminal contempt is a punitive measure, imposed retrospectively for a completed act of disobedience, meant to vindicate the authority of the Court. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994); *Dartez v. Peters*, 759 F. App'x 684, 690 (10th Cir. 2018) (unpublished). Section 401(3) of Title 18 provides that a "court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Federal Rule of Criminal Procedure 42 states that "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on

11

notice," but that the "court must request that the contempt be prosecuted by an attorney for the government." Fed. R. Crim. P. 42(a).

While false statements made to the Court could merit criminal penalties, *see, e.g.*, 18 U.S.C. § 1623(a), the Court finds that nothing in Mr. Dumitrascu's two-page motion, or in the documents attached to the motion, identifies the testimony he believes was false or the documents he believes were fabricated. Because Mr. Dumitrascu provides no support for his arguments, the Court will deny Mr. Dumitrascu's motion. Moreover, Mr. Dumitrascu fails to explain why these alleged violations could not have been addressed through contemporaneous objections or on appeal, or why a criminal contempt proceeding would be appropriate to address events that occurred nearly four years ago.

### 2. Civil Contempt

The motion for civil contempt claims that "attorney Habib Nasrullah was acting as a private attorney, not as a federal representative. This omission led the Court to believe that the Hague Convention case was supported or endorsed by the United States government." Docket No. 102 at 1. Mr. Dumitrascu claims that this "created a procedural defect that undermined the integrity of the process." *Id.* The motion also alleges that Ms. Dumitrascu and "supporting witnesses" made misrepresentations to the Court. *Id.* at 2. Mr. Dumitrascu asks the Court to hold Mr. Nasrullah and Ms. Dumitrascu in contempt and to "[o]rder appropriate corrective measures, including but not limited to revisiting the original judgment." *Id.* Mr. Dumitrascu does not explain why he was not able to raise the issue before the entry of final judgment or on appeal. He also fails to explain why a contempt motion filed years after the alleged events should be considered timely.

A sanction of civil contempt is meant to "compel obedience of [a] court order or to compensate the litigant for injuries sustained from the disobedience." *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 500 (10th Cir. 1980) (quoting *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976)).  As the party moving for civil contempt, Mr. Dumitrascu has the burden of proving, by clear and convincing evidence, that 1) a valid court order existed, 2) the party to be sanctioned had knowledge of the order, and 3) the party to be sanctioned disobeyed that order. *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008).  Mr. Dumitrascu does not discuss these factors and does not provide any arguments or evidence that could be construed to support these factors.[8]  Moreover, for the reasons discussed earlier in this order, the Court finds Mr. Dumitrascu's allegation of "misrepresentations" by Mr. Nasrullah to be without merit.  Mr. Dumitrascu provides no support for his claim.  The Court notes that Mr. Nasrullah signed Ms. Dumitrascu's complaint as her attorney and listed his employer as the law firm Davis Graham and Stubbs LLP.  *See* Docket No. 1 at 10.  Mr. Nasrullah did not purport to have the support or endorsement of the government, and the Court was not under the impression that he had any such authority.  The Court also finds that Mr. Dumitrascu's motion or exhibits have not provided any credible evidence of fraud by Ms. Dumitrascu or any other witnesses.  The Court therefore will deny the motion for civil contempt.

### D. Preliminary Injunction

Mr. Dumitrascu requests a preliminary injunction to "temporarily suspend the enforceability and legal effect of the judgment issued in 2021 under the Hague

---

[8] Given that the motion is facially deficient, the Court finds no reason that an evidentiary hearing on this matter would be necessary.

13

Convention," pending resolution of his Rule 60(b)(6) motion, his motion to recuse, and "all associated filings." Docket No. 100 at 1. Mr. Dumitrascu does not cite any authority for the proposition that a preliminary injunction is the proper means of pausing the enforcement of a court order, and the Court is not aware of any such authority. Moreover, the relief he appears to seek – suspension of the Court's original judgment while the Court rules on his various motions – is now moot because the Court is, through this order, ruling on all of Mr. Dumitrascu's pending motions. The Court will deny the motion seeking a preliminary injunction.

### III. CONCLUSION

**It is therefore**

**ORDERED** that defendant-respondent Alin Dumitrascu's motion to transfer venue, Docket No. 108, is **DENIED**. It is further

**ORDERED** that defendant-respondent Alin Dumitrascu's letter filed on April 24, 2025, construed as a motion to transfer the case to another judge, Docket No. 88, is **DENIED**. It is further

**ORDERED** that defendant-respondent Alin Dumitrascu's motions seeking relief under Federal Rule of Civil Procedure 60(b)(6), Docket Nos. 89, 96, 104, 106, 107, are **DENIED**. It is further

**ORDERED** that defendant-respondent Alin Dumitrascu's motions for criminal and civil contempt, Docket Nos. 101, 102, are **DENIED**. It is further

**ORDERED** that defendant-respondent Alin Dumitrascu's motion for a preliminary injunction, Docket No. 100, is **DENIED**. It is further

**ORDERED** that defendant-respondent Alin Dumitrascu's motions for a status update, Docket Nos. 95, 97, 99, 110, are **DENIED as moot**.

DATED August 5, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge